IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAVIER BARRIENTOS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No.: **3:12-cv-00803-DRH-PMF** |
| | ) |
| ALLAN MARTIN, | ) |
| | ) |
| Respondent. | ) |

**REPORT AND RECOMMENDATION**

**FRAZIER, Magistrate Judge:**

Before the Court is Petitioner Javier Barrientos petition for a writ of habeas corpus (Doc. 1) filed pursuant to 28 U.S.C. § 2254. Barrientos is presently incarcerated at Vienna Correctional Center ("Vienna"), a correctional facility under the control of the Illinois Department of Corrections ("IDOC"). Respondent Allen Martin has filed a response (Doc. 12) to the petition, and Barrientos has filed a reply (Doc. 18). For the following reasons, it is recommended that the petition (Doc. 1) be denied and this habeas litigation be dismissed.

A. Facts

Unless the petitioner rebuts the determination of fact made by a state court by clear and convincing evidence, then the facts are presumed correct. 28 U.S.C. § 2254(e)(1). Petitioner has not rebutted the appellate court's summary of the facts, which are as follows:

> [Barrientos'] conviction arose from the fatal stabbing of the victim, Yazmin Perez, at 10:15 p.m. on June 8, 2000, in the parking lot of a White Hen Pantry located at 1580 South Busse Road in Mount Prospect. Medical evidence established that the victim sustained a single stab wound to her abdomen, involving the small intestine, iliac artery, and iliac vein. The wound was four to five inches deep. She was five feet, three inches tall and weighed 196 pounds.

1

Fabiana Perez, the victim's sister and [Barrientos'] girlfriend, testified that she was pregnant with [Barrientos'] child at the time of the incident. She resided with [Barrientos], but spent several days in a psychiatric clinic after attempting suicide. On the night of incident, she escaped from the clinic and sough refuge, asking both [Barrientos] and the victim for assistance. After telling [Barrientos] that her sister was "chasing" her out, Fabiana made an arrangement with [Barrientos] that she would meet him in the White Hen parking lot, and he would drive her to a hotel. [Barrientos] and his brother[, Rafeal,] arrived to find Fabiana and the victim talking in the parking lot.

Cedrick Johnson testified he was a customer at White Hen and witnessed the incident from inside the store. He observed [Barrientos] jump out of his car and approach the victim. Fabiana pulled at [Barrientos] from behind, but the man with [Barrientos] grabbed Fabiana and took her back to [Barrientos'] car. [Barrientos] held the victim with one hand and thrust at her with the other hand. After the victim was struck by [Barrientos], she held her right side with both hands. [Barrientos] then retreated to his car as the victim cried for help, staggered, and fell to the ground. When Johnson saw a large red spot on the victim's white shirt, he told a store employee to call 911.

Fabiana Perez testified that she tried to stop [Barrientos] from hitting her sister. [Barrientos] and Fabiana engaged in pushing and pulling each other, and [Barrientos] called the victim a whore. During the confrontation, [Barrientos'] work knife, a knife Fabiana had seen previously, fell to the ground with its blade closed. After the knife fell, [Barrientos] yelled to his brother to grab Fabiana. [Rafeal] grabbed Fabiana, but she managed to see [Barrientos] pick up his knife and stab the victim. The victim's hands were in her pockets when [Barrientos] stabbed her.

[Barrientos] testified that he arrived at the scene to find the victim hitting his girlfriend. He had a knife in his pocket because it was the knife he used at work to separate large boxes, and he was wearing his work pants. [Barrientos] stated that the victim came towards his, shoved him, and threatened him. He admitted stabbing the victim while she had her hands hidden in her T-shirt. [Barrientos] did not see the victim pull anything out of her shift, but he stated he was scared and stabbed her.

Detective Lee Schaps testified to the custodial conversation he had with [Barrientos] at 6:15 a.m. the day after the incident. [Barrientos] told Detective Schaps that he called the victim a "faggot" and that he approached the victim to confront her. He said that Fabiana's escape from the psychiatric clinic made him angry. He did not tell Detective Schaps that the victim had ever pushed him.

In finding [Barrientos] guilty, the trial court rejected [Barrientos'] claim that the killing constituted second degree murder, stating that [Barrientos'] actions were a result of his anger, rather than self-defense or sudden and intense passion.

2

> The court reasoned that a four- to five-inch deep stab wound was "not a scrape, but a thrusting, gouging powerful thrust of this very long knife," and, therefore, could not be considered self-defense. Additionally, the court believed that [Barrientos] cursed at the victim, initiating the confrontation, and it discounted [Barrientos'] trial testimony.

*See* Doc. 13-1 at 38-41.

### B. Procedural Background

Barrientos was convicted in 2001 in the Illinois First Judicial Circuit (Cook County, Illinois) of first-degree murder and sentenced to 25 years imprisonment. *See* Doc. 13-1 at 38. He then unsuccessfully appealed the conviction on the ground that his conviction should be reduced to second degree murder because he unreasonably believed in the need for self-defense (s*ee id.* at 43), and the Illinois Supreme Court denied Barrientos's petition for leave to appeal ("PLA") on February 5, 2003 (s*ee* Doc. 13-2 at 18). He did not file a petition for a writ of certiorari to the U.S. Supreme Court.

In July 2003, Barrientos filed a post-conviction petition in State court pursuant to 725 ILCS § 5/122-1. *See* Doc. 13-3. He claimed that he received ineffective assistance of counsel which so prejudiced him to deny him a fair trial because trail counsel: 1) failed to present the occurrence witness, Rafeal Barrientos (Petitioner's brother), as a defense witness at trial to corroborate his defense theory of unreasonable self-defense to reduce his conviction to second degree murder, 2) failed to present expert medical testimony of the treating physician, Dr. Basile, who would have testified that Barrientos needed his medication for his non-insulin dependent diabetes, which contributed to his distorted perceptions that he needed to use deadly force to defend himself, 3) failed to present corroborating testimony from lead Detective A. Wilcox that Barrientos did not appear to be sober when arrested, which would have corroborated Barrientos's testimony that he was impaired or suffering from a diminished capacity during the stabbing. *See*

3

*id*. at 18-19.  The trial court dismissed the post-conviction proceeding on May 29, 2009, holding that Barrientos failed to show either prong of an ineffective assistance claim. *See also* Doc. 13-11 at 187.

Barrientos then appealed to the Illinois Appellate Court, 1st District, arguing that his petition stated a meritorious claim that the trial counsel rendered ineffective assistance by not investigating or calling Rafael as a trial witness to corroborate defendant's exculpatory account of events. *See* Doc. 13-5 at 16.  The appellate court affirmed the trial court's decision on November 10, 2011. *See* Doc. 13-5 at 13.  Barrientos filed a Petition for Rehearing with the appellate court, but was denied on January 5, 2012. *See* Doc. 13-6.  Barrientos filed a PLA with the Illinois Supreme Court claiming the appellate court erred when dismissing his post-conviction petition by making improper fact-finding and credibility determinations. *See* Doc. 13-7 at 11.  The Illinois Supreme Court denied the PLA on March 28, 2012. *See Doc*. 13-7 at 27.

### C.  Barrientos's § 2254 Petition (Doc. 1)

A prisoner "in custody pursuant to the judgment of a State court only" may file a petition for a writ of habeas corpus pursuant to 28 U.S.C § 2254 "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  On July 12, 2013, Barrientos filed the instant petition for a writ of habeas corpus. *See* Doc. 1 at 15.  Respondent concedes that there are procedural roadblocks at issue that would prevent the Court from reaching the merits of the claim for relief. *See* Doc. 12 at 5.  Barrientos claims that the Illinois Appellate Courts' rejection of his ineffective assistance of counsel argument that counsel was infective because it failed to call his brother Rafael as a witness to support his otherwise uncorroborated defense was contrary to or an unreasonable application of federal law. *See* Doc. 1 at 9; *see also* 28 U.S.C. § 2254(d)(1).

### D. Standard of Review

An application for a writ of habeas corpus…pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court…, (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d); *Cullen v. Pinholster,* 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011), *reh'g denied,* 131 S. Ct. 2951 (2011).  This is a "'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Id.* (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).  "The petitioner carries the burden of proof." *Id.* Federal habeas corpus review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Id*.

### E. Discussion

Barrientos argues that his trial counsel was ineffective for not permitting his brother Rafael to testify because the testimony could have cast doubt on the intent aspect of the first degree murder charge. *See* Doc. 1 at 9.  "The purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation…but simply to ensure that criminal defendants receive a fair trial." *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984) (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686.

In order to demonstrate ineffective assistance of counsel, a petitioner must demonstrate that 1) counsel's performance fell below an objective standard of reasonableness, and 2) that counsel's performance gives rise to a reasonable probability that, if counsel had performed adequately, the result of the trial would have been different. *Id*. at 687-695. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 164 (1955)). In deciding § 2254(d) motions involving the *Strickland* standard, the court considers the question of "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 131 S. Ct. 770, 788, 178 L. Ed. 2d 624 (2011)

Here, the appellate court recited the ineffective assistance counsel standard it utilized in resolving Barrientos' case as follows:

> Where a defendant claims that he was denied his right to effective assistance of counsel, he must prove that (1) counsel's actions constituted errors so serious as to fall below an objective standard of reasonableness under prevailing professional norms, and (2) absent these errors, there was a reasonable probability that his trial would have had a different outcome. [*People v. Lacy*, 407 Ill.App.3d 422, 456-57 (Ill. App. 2011)]. For the latter prong, the probability must be sufficient to undermine confidence in the outcome; that is, counsel's deficient performance rendered the result of the trial unreliable or fundamentally unfair. *Lacy*, 407 Ill. App. 3d at 457. Trial counsel's decisions regarding which witnesses to call is a matter of trial strategy, generally immune from claims of ineffective assistance of counsel. *Lacy*, 407 Ill. App. 3d at 466.

Doc. 13-5 at 16. Clearly the state appellate court did not directly cite the *Strickland* decision. *See id*. But it is also clear that the state appellate court was reciting legal principles from *Strickland*, and the principles were correctly stated. *See Strickland*, 466 U.S. at 687-95. *See also People v. Lacy*, 407 Ill.App.3d at 456-57 (repeatedly citing the *Strickland* decision). As a result, the state

appellate court's decision was not contrary to, or an unreasonable application of, clearly established federal law merely because it did not cite to federal cases when reciting the ineffective assistance of counsel legal standard. *See Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (providing that citations of controlling federal decisions is not required so long as neither the reasoning nor the result of the state-court decision contradicts them).

The state appellate court addressed the first *Strickland* prong; whether counsel's performance fell below an objective standard of reasonableness. *See* Doc. 13-5 at 17. It also addressed the second *Strickland* prong; whether counsel's performance gives rise to a reasonable probability that, if counsel had performed adequately, the result of the trial would have been different. *See id*. The state appellate court determined that counsel's decision not to call Rafael as a witness was not unreasonable. *See id*. It also concluded that the trial was not rendered "unreliable or fundamentally unfair" by counsel's decision not to call Rafael as a witness. *See id.*

The state appellate court discussed the circumstances surrounding counsel's decision of whether or not to call Rafael as a witness and noted that counsel was aware of Rafael and that he was Barrientos' brother. *See id*. Rafael's relationship to Barrientos is a factor that counsel likely considered in assessing the potential bias and credibility of Rafael's proposed testimony. Additionally, Rafael's testimony would have been, by all accounts, partially contradictory to Barrientos' own testimony and medical evidence presented in the trial. *See* Doc. 12 at 10-11. These facts likely weighed heavily on counsel's decision not to call Rafael as a witness. The state appellate court also highlighted that Rafael was an active participant in the fatal incident. *See* Doc. 13-5 at 17. Additionally, it noted that Rafael's proposed testimony was at odds with the testimony of a disinterested witness. *See id*. The undersigned agrees that state appellate court

7

correctly determined that counsel's performance in deciding not to call Rafael as a witness did not fall below an objective standard of reasonableness, and counsel's decision would not have changed the result of the trial.

Accordingly, Barrientos has failed to meet his burden of demonstrating that the state appellate court's decision that was contrary to, or involved an unreasonable application of, clearly established federal law or was based on an unreasonable determination of the facts.

### RECOMMENDATION

It is recommended that Javier Barrientos's petition for a writ of habeas corpus (Doc. 1) be denied and this habeas litigation be dismissed.

**SO RECOMMENDED.**

**DATED: September 11, 2013.**

*s/ Philip M. Frazier*
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**