IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JAVIER BARRIENTOS,

    Petitioner,

v.                              No. 12-803-DRH-PMF

ALLAN MARTIN,

    Respondent.

## MEMORANDUM AND ORDER

**HERNDON, Chief Judge:**

### I.    Introduction

This matter comes before the Court on Magistrate Judge Philip M. Frazier's September 11, 2013 Report and Recommendation ("the Report") (Doc. 19). The Report recommends that the Court deny Barrientos' petition for a writ of habeas corpus and dismiss the case. Barrientos filed timely objections (Doc. 20). Based on the following, the Court **ADOPTS** the Report in its entirety.

On July 16, 2012, Barrientos, *pro se*, filed a petition for writ of habeas pursuant to Section 2254 (Doc. 1). Barrientos argues that his conviction is unconstitutional due to ineffective assistance of counsel. Specifically, that trial counsel was ineffective for failing to present the testimony of petitioner's brother at trial. The Government thereafter responded arguing that the state appellate court's rejection of Barrientos' argument that trial counsel was ineffective was

neither contrary to, nor an unreasonable application of, United States Supreme Court Precedent (Doc. 12).

On September 11, 2013, pursuant to 28 U.S.C. § 636(b)(1)(B), Magistrate Judge Frazier submitted the Report recommending denial of Barrientos' petition. The Report was sent to the parties with a notice informing them of their right to appeal by way of filing "objections" by September 30, 2013. On September 30, 2013, Barrientos filed objections to the Report.

Barrientos raises a single objection, essentially a restatement of the argument in his petition, that trial counsel's failure to have Barrientos' brother testify renders his conviction unconstitutional. He chooses two points to emphasize. First, he argues that his brother's testimony would have been exculpatory, that the failure to present such evidence is ordinary deficient barring some consideration, and that there is "no suggestion in the record that there was any reason not to put [his brother] on the stand" (Doc. 20). Second, Barrientos asserts that "counsel's decision to . . . put [his bother] on the stand was based on, as the record reflects, . . . an inadequate investigation" (*Id.*). Specifically, Barrientos argues that counsel never followed up with his brother regarding his potential testimony.

Since timely objections have been filed, this Court must undertake *de novo* review of the Report. 28 U.S.C. § 636(b)(1)(B). The Court may "accept, reject or modify the recommended decision." *Willis v. Caterpillar Inc.,* 199 F.3d 902, 904 (7th Cir.1999). In making this determination, the Court must look at all the

evidence contained in the record and give fresh consideration to those issues to which specific objection has been made. *Id.*

## II. <u>Facts</u>

In 2001, Barrientos was convicted of first-degree murder and sentenced to 25 years imprisonment. A determination of a factual issue made by a State court is presumed to be correct unless petitioner can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Baddell v. Correll*, 452 F.3d 648, 659 (7th Cir. 2006). In this case Barrientos has not rebutted the appellate court's summary of the facts. The following is an excerpt from the Illinois Appellate Court Order issued September 30, 2002.

> [Barrientos'] conviction arose from the fatal stabbing of the victim, Yazmin Perez, at 10:15 p.m. on June 8, 2000, in the parking lot of a White Hen Pantry located at 1580 South Busse Road in Mount Prospect. Medical evidence established that the victim sustained a single stab wound to her abdomen, involving the small intestine, iliac artery, and iliac vein. The wound was four to five inches deep. She was five feet, three inches tall and weighed 196 pounds.
>
> Fabiana Perez, the victim's sister and [Barrientos'] girlfriend, testified that she was pregnant with [Barrientos'] child at the time of the incident. She resided with [Barrientos], but spent several days in a psychiatric clinic after attempting suicide. On the night of incident, she escaped from the clinic and sought refuge, asking both [Barrientos] and the victim for assistance. After telling [Barrientos] that her sister was "chasing" her out, Fabiana made an arrangement with [Barrientos] that she would meet him in the White Hen parking lot, and he would drive her to a hotel. [Barrientos] and his brother[, Rafeal,] arrived to find Fabiana and the victim talking in the parking lot.
>
> Cedrick Johnson testified he was a customer at White Hen and witnessed the incident from inside the store. He observed [Barrientos] jump out of his car and approach the victim. Fabiana pulled at [Barrientos] from behind, but the man with [Barrientos] grabbed Fabiana and took her back to [Barrientos'] car. [Barrientos] held the victim with one hand and thrust

at her with the other hand. After the victim was struck by [Barrientos], she held her right side with both hands. [Barrientos] then retreated to his car as the victim cried for help, staggered, and fell to the ground. When Johnson saw a large red spot on the victim's white shirt, he told a store employee to call 911.

Fabiana Perez testified that she tried to stop [Barrientos] from hitting her sister. [Barrientos] and Fabiana engaged in pushing and pulling each other, and [Barrientos] called the victim a whore. During the confrontation, [Barrientos'] work knife, a knife Fabiana had seen previously, fell to the ground with its blade closed. After the knife fell, [Barrientos] yelled to his brother to grab Fabiana. [Rafeal] grabbed Fabiana, but she managed to see [Barrientos] pick up his knife and stab the victim. The victim's hands were in her pockets when [Barrientos] stabbed her.

[Barrientos] testified that he arrived at the scene to find the victim hitting his girlfriend. He had a knife in his pocket because it was the knife he used at work to separate large boxes, and he was wearing his work pants. [Barrientos] stated that the victim came towards his, shoved him, and threatened him. He admitted stabbing the victim while she had her hands hidden in her T-shirt. [Barrientos] did not see the victim pull anything out of her shift, but he stated he was scared and stabbed her.

Detective Lee Schaps testified to the custodial conversation he had with [Barrientos] at 6:15 a.m. the day after the incident. [Barrientos] told Detective Schaps that he called the victim a "faggot" and that he approached the victim to confront her. He said that Fabiana's escape from the psychiatric clinic made him angry. He did not tell Detective Schaps that the victim had ever pushed him.

In finding [Barrientos] guilty, the trial court rejected [Barrientos'] claim that the killing constituted second degree murder, stating that [Barrientos'] actions were a result of his anger, rather than self-defense or sudden and intense passion. The court reasoned that a four- to five-inch deep stab wound was "not a scrape, but a thrusting, gouging powerful thrust of this very long knife," and, therefore, could not be considered self-defense. Additionally, the court believed that [Barrientos] cursed at the victim, initiating the confrontation, and it discounted [Barrientos'] trial testimony.

### III. Procedural History

Subsequently Barrientos unsuccessfully appealed his conviction asserting that his conviction should be reduced to second degree murder because he unreasonably believed in the need for self-defense. On September 30, 2002, the state appellate court affirmed the conviction and denied his petition for leave to appeal ("PLA") on February 5, 2003. He did not file a petition for a writ of certiorari to the U.S. Supreme Court.

On July 18, 2003, Barrientos filed a post-conviction petition in State court. He asserted that his trial counsel was ineffective for a number of reasons including failing to present the testimony of his brother, Rafael, at trial. The trial court denied the petition. Barrientos again unsuccessfully appealed the decision to the appellate court this time raising the single claim regarding his brother's testimony. On November 10, 2011, the appellate court affirmed the trial court's judgment. The appellate court subsequently denied Barrientos' petition for rehearing. He then filed a PLA with the Illinois Supreme Court. On March 28, 2012, the Illinois Supreme Court denied his PLA.

### IV. Analysis

Barrientos' habeas petition is subject to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A federal habeas court's role in reviewing state prisoner applications was modified by AEDPA "in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693 (2002).

Habeas relief is denied unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court hearing." 28 U.S.C. § 2254(d). A judgment is "contrary to" Supreme Court precedent if the state court made a statement of law inconsistent with one made by the Supreme Court, or if the state court decided differently from the Supreme Court a case with "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision is an "unreasonable application of" clearly established law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* The Seventh Circuit has noted that the scope of federal review on habeas is "strictly limited," and that the unreasonable application standard is "a difficult standard to meet." *Jackson v. Frank*, 348 F.3d 658, 661–62 (7th Cir.2003).

The question, therefore, before the Court is whether the state appellate court's decision was either contrary to or an unreasonable application of Supreme Court precedent.

To establish a claim for ineffective assistance of counsel, a petitioner must demonstrate (1) counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's performance gives rise to a reasonable probability that, if counsel had performed adequately, the result of the trial would

have been different. *Strickland v. Washington*, 466 U.S. 668, 687-95 (1984). When reviewing a claim of ineffective assistance of counsel in habeas petitions, the federal court must honor any "reasonable" state court decision as "only a clear error in applying *Strickland's* standard would support a writ of habeas corpus." *Holman v. Gilmore*, 126 F.3d 876, 882 (7th Cir. 1997). The standards governing review under *Strickland* and § 2254 are both highly deferential, therefore "in tandem, review is 'doubly' so." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011). When § 2254(d) applies, the question becomes whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard. *Id.*

The Court finds that the Illinois Appellate Court's decision was consistent with, and a reasonable application of, the Supreme Court's clearly established precedent in *Strickland*.

The appellate court articulated the ineffective assistance of counsel standard as:

> Where a defendant claims that he was denied his right to effective assistance of counsel, he must prove that (1) counsel's actions constituted errors so serious as to fall below an objective standard of reasonableness under prevailing professional norms, and (2) absent these errors, there was a reasonable probability that his trial would have had a different outcome. [*People v. Lacy*, 407 Ill.App.3d 422, 456-57 (Ill. App. 2011)]. For the latter prong, the probability must be sufficient to undermine confidence in the outcome; that is, counsel's deficient performance rendered the result of the trial unreliable or fundamentally unfair. *Lacy*, 407 Ill. App. 3d at 457. Trial counsel's decisions regarding which witnesses to call is a matter of trial strategy, generally immune from claims of ineffective assistance of counsel. *Lacy*, 407 Ill. App. 3d at 466.
> (Doc. 13-5 at 16).

While the Court did not cite to *Strickland*, it clearly recited the legal principles from the decision. In fact, the case cited by the Illinois Appellate Court relies heavily on *Strickland*. *See People v. Lacy*, 407 Ill.App.3d 442, 455-57 (Ill. App. 2011). However, citation of *Strickland* is unnecessary, "so long as neither the reasoning nor the result of the state-court decision contradicts" Supreme Court precedent. *Early v.* Packer, 537 U.S. 3, 8 (2002).

The appellate court then reasonably applied the *Strickland* test. The appellate court found that counsel's decision not to call Barrientos' brother as a witness was reasonable considering his involvement in the incident, his relationship with Barrientos, and that his testimony was contradicted by that of a disinterested witness. It further concluded that counsel's decision would not have changed the result of the trial. (Doc. 13-5 at 17).

Therefore the Court agrees with the Report's conclusion that Barrientos failed to meet his burden of demonstrating that the state appellate court's decision that was contrary to, or involved an unreasonable application of, clearly established federal law or was based on an unreasonable determination of the facts.

## V. Certificate of Appealability

Finally, "[t]he district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant." RULES GOVERNING SECTION 2254 CASES, RULE 11(A). A COA may issue only if the applicant has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. §

2253(c)(2). When the Court denies petitioner's Section 2254 petition on the merits and not merely for procedural reasons, the Supreme Court has found that the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). Here, Barrientos has failed to demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. Therefore, the Court declines to issue a COA.

## VI. Conclusion

Accordingly, the Court **ADOPTS** the Report in its entirety (Doc. 19). Petitioner Javier Barrientos' petition for a writ of habeas corpus pursuant to Section 2254 (Doc. 1) is **DENIED** and Barrientos' case is **DISMISSED with prejudice.** The Clerk of the Court is **DIRECTED** to enter judgment accordingly. Further, the Court shall not issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed this 3rd day of December, 2013.

Digitally signed by
David R. Herndon
Date: 2013.12.03
09:51:40 -06'00'

**Chief Judge
United States District Court**